UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| **HIPOLITO ARANDA,** | ) | **Case No. 3:12-CV-00170-SI** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CITY OF MCMINNVILLE, YAMHILL** | ) | |
| **COUNTY, TIMOTHY HEIDT,** *personally,* | ) | |
| **C. DESMOND,** *personally,* **DEPUTY BROYLES,** | ) | |
| *personally,* **RON NOBLE,** *both individually and in* | ) | |
| *his official capacity as police chief,* and **JACK** | ) | |
| **CRABTREE,** *both individually and in his official* | ) | |
| *capacity as Sheriff,* | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Leonard R. Berman, 4711 SW Huber Street, Suite E-3, Portland, OR 97219. Attorney for Plaintiff.

Carl R. Rodrigues, Lehner & Rodrigues, PC, 1500 SW First Avenue, Suite 1150, Portland, OR 97201. Attorney for Defendants Yamhill County, Deputy Broyles, and Jack Crabtree.

**SIMON, District Judge.**

Early in the morning of February 13, 2010, the McMinnville police stopped a car in

which Hipolito Aranda was a passenger. About thirty minutes into the stop, a McMinnville

police officer approached Aranda, forced him to the ground, and repeatedly punched Aranda in

the face and back while attempting to place him in handcuffs. A Yamhill County deputy sheriff

also struck Aranda repeatedly with his fist and knee, and another McMinnville police officer

tased Aranda multiple times in the legs. The incident left Aranda with two broken ribs, a broken

elbow, and abrasions and bruises on his face and body. Although Aranda was charged with

resisting arrest, interfering with a peace officer, and assault in the fourth degree, a jury acquitted

him on all counts. In this civil lawsuit, Aranda brings claims against the two police officers and

the deputy sheriff, as well as the city, the county, the city's police chief, and the county's sheriff,

alleging violations of his constitutional rights and various torts under state law. Defendants

Yamhill County ("County"), Sheriff Jack Crabtree, and Deputy Sheriff Richard Broyles

(collectively, "County Defendants") have moved for summary judgment. For the reasons that

follow, the motion is granted in part and denied in part.

## BACKGROUND[1]

At around 2:43 a.m. on the morning of February 13, 2010, McMinnville police officer

James[2] stopped a car driven by Colleen Chastain due to a traffic infraction.[3] McMinnville police

sergeant Timothy Heidt arrived shortly thereafter to provide cover for James. Aranda, a forty-

eight-year-old Hispanic male, remained in the passenger seat of the car while James and Heidt

---

[1] As discussed more fully below, because County Defendants have moved for summary judgment, the Court considers the evidence in the light most favorable to Aranda, drawing all reasonable inferences in his favor. *See Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

[2] Officer James's first name is not in the record before the Court.

[3] The following summary relies on the McMinnville Police Department's recently completed use of force review, as well as a videotape of the incident. *See* Dkt. 24-2. For the reasons discussed below, the Court denies County Defendants' motion to strike the use of force review.

OPINION AND ORDER, Page 2

talked with Chastain on the street. When McMinnville police sergeant Desmond[4] arrived at the scene, Heidt left to respond to another call. Desmond and James eventually concluded that Chastain was driving under the influence and attempted to take her into custody, but she resisted and a struggle ensued. By this time, more than twenty minutes into the stop, Chastain's daughter had arrived at the scene, and she and Aranda got out of their respective cars at about the same time and approached the struggle.

Desmond ordered them both back into their cars; Chastain's daughter complied, and Aranda returned to the stopped vehicle but did not get back inside. Meanwhile, Desmond requested additional cover over the radio. When Heidt responded that he was returning, James radioed for Heidt to "step it up." Desmond then clarified over the radio, "Five, I just need you to watch the male that's not doing what I ask him to do." Heidt arrived at the traffic stop just as Aranda was returning to stand by Chastain's car.

The following encounter was video-recorded by the police. Heidt approached Aranda and told him to take his hands out of his pockets. Aranda complied, and Heidt then pushed Aranda's arms over his head in order to frisk him. When Aranda tried to lower his arms, Heidt grabbed Aranda's left arm, spun him around, and forced him to the ground so quickly that Aranda bounced upon hitting the pavement.[5] This entire sequence of events took six seconds.

Heidt then struck Aranda in the left side, trying to draw Aranda's arms behind him. Broyles, who had heard the radio call to "step it up," arrived at the scene in time to see Heidt

---

[4] Sergeant Desmond's first name is not in the record before the Court.

[5] The McMinnville Police Department recently concluded that there was no probable cause or evidence of a threat to justify Heidt's initial frisk of Aranda. *See* Dkt. 24-2 at 4. It also concluded that Aranda had been non-confrontational and compliant with Heidt's commands up to this point. *Id.*

OPINION AND ORDER, Page 3

take Aranda to the ground. Five seconds later, Broyles joined Heidt on Aranda's right side and

tried to gain control of Aranda's right arm. Almost immediately, Broyles and Heidt started

punching Aranda repeatedly and rapidly in the head. Broyles also used his knee to strike Aranda

in the face and shoulder. Both officers shouted commands at Aranda to stop resisting and to put

his hands behind his back.[6] Aranda instead kept his hands near his head, at times attempting to

deflect the blows to his face. Although the video quality is poor, it does not appear that Aranda

reached for his waistline or made other combative movements. Broyles also did not hear Aranda

make any threatening statements.

Twenty seconds into the encounter, Desmond approached and tased Aranda in the legs,

after which Broyles struck Aranda several more times with his knee. Within a minute of Heidt's

initial approach, the officers had Aranda in handcuffs and under control. The police then

searched Aranda for weapons and found a pocket knife. Aranda was treated at a hospital for

fractured ribs on his left side, a fractured left elbow, and abrasions and contusions. He then spent

the next five days in jail. Although Aranda was eventually prosecuted for resisting arrest and

related charges stemming from the struggle with Heidt, Broyles, and Desmond, a jury acquitted

him on all counts.

## SUMMARY JUDGMENT STANDARD

On a defendant's motion for summary judgment, the Court must view the evidence in the

light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor.

*Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). A party is entitled

to summary judgment if the "movant shows that there is no genuine dispute as to any material

---

[6] Aranda speaks Spanish, although he also understands some English.

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

moving party has the burden of establishing the absence of a genuine dispute of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although "[c]redibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere

existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine

issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

(quotations and citation omitted).

## DISCUSSION

### I.    County Defendants' Motion to Strike

As a preliminary matter, County Defendants have moved to strike the McMinnville

Police Department's Use of Force Review ("Use of Force Review"), dated February 14, 2013.

*See* Dkt. 26. This document was the result of a secondary review conducted by the police

department "based on the discovery of a video recording that had not been utilized or available

for the initial use of force review" and that depicts the entirety of the interaction between Heidt

and Aranda. Dkt. 24-2 at 1. The later review describes in detail the video footage of the incident,

the dispatch audio tape, and Heidt's own account, and it analyzes each stage of the encounter

between the officers and Aranda. The reviewers conclude that Heidt violated McMinnville

Police Department policy by using more force than reasonably necessary, by using force without

probable cause to effect arrest, and by using force when other reasonable alternatives were

available. *Id.* at 5. The evaluators also expressed concern about Heidt's credibility based on discrepancies between his account of the events and the newly discovered video footage. *See id.* at 6.

County Defendants object to the admissibility of the Use of Force Review on several grounds. First, they argue under Federal Rule of Evidence 401 that the review is not relevant to the claims against County Defendants because, *inter alia*, it does not address the behavior of Broyles or Crabtree. The Court does not agree. In particular, the evaluators concluded that, based on Aranda's "defensive posture and non-aggressive actions," "there does not appear to be a valid basis for administering this level of force, particularly to the head" and that "[t]he head strikes administered by Sgt Heidt *and Deputy Boyles* appeared counterproductive to affecting [sic] the arrest as they intensified [Aranda's] efforts to pull his arms and hands into a defensive position around his head." Dkt. 24-2 at 5 (emphasis added). This is sufficient to satisfy the low threshold for relevancy under Rule 401.[7]

---

[7] County Defendants rely on a Seventh Circuit case affirming the exclusion of a police department's use of force policy in a § 1983 action because the policy "shed no light on" whether a Fourth Amendment violation had occurred. *See Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). Ninth Circuit case law, however, makes clear that police department policies may be relevant to determining the reasonable range of an officer's conduct in an excessive force case. *See Glenn v. Wash. Cnty.*, 673 F.3d 864, 875 (9th Cir. 2011). Indeed, County Defendants themselves have submitted the County's policy on use of force to support their argument that Broyles' conduct was reasonable.

The other case relied upon by County Defendants, *Garcia-Martinez v. City & County of Denver*, 392 F.3d 1187 (10th Cir. 2004), is not analogous. In that case, the police officers' disciplinary records were excluded under Rule 401 because the officers had only been disciplined for violations of department policy that were not relevant to the plaintiff's claims. That is, while the plaintiff claimed that the officers used unconstitutionally excessive force against him, the disciplinary proceedings had related only to safe weapon handling and violations of standard police procedures. *See id.* at 1194. In comparison, the Use of Force Review here is directly relevant to Aranda's claim that both Heidt and Broyles used unconstitutionally excessive force.

Second, County Defendants argue that the Use of Force Review is unduly prejudicial. *See* Fed. R. Evid. 403. The Court does not agree that the review's probative value is "substantially outweighed" by the danger of unfair prejudice, *id.*, particularly as the review is focused on characterizing Heidt's conduct and does not recommend or impose any remedial measures.

Third, County Defendants suggest that the Use of Force Review should be excluded as hearsay. At least for summary judgment purposes, the Court is satisfied that the review is admissible as an exception to the rule against hearsay because it is a public record that sets out "factual findings from a legally authorized investigation" and "neither the source of information nor other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8); *see also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988) (holding that fact-based conclusions and opinions contained in investigative reports are admissible under Rule 803(8)).

Finally, County Defendants argue that the Use of Force Review constitutes a subsequent remedial measure taken by the police department and thus should be excluded under Federal Rule of Evidence 407. That rule provides in part:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction.

Fed. R. Evid. 407. By it terms, this rule is limited to measures that would have made the harm less likely to occur; it does not extend to post-incident investigations into what *did* occur. "The reason [for finding Rule 407 inapplicable] is that such reports or inspections are not *themselves* remedial measures, and do not themselves even reflect decisions to take or implement such measures." Christopher Mueller & Laird Kirkpatrick, 2 FEDERAL EVIDENCE § 4:50, at 77 (3d ed. 2007). Although "such reports or inspections might represent the first or most preliminary steps

OPINION AND ORDER, Page 7

that might eventually lead to decisions to make or implement changes," they are not themselves excluded under Rule 407. *Id.*; *accord Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 429-32 (5th Cir. 2006); *Prentiss & Carlisle Co., Inc. v. Koehring-Waterous Div. of Timberjack, Inc.*, 972 F.2d 6, 10 (1st Cir. 1992) ("The Rule prohibits 'evidence of … subsequent measures,' not evidence of a party's analysis of its product. … The fact that the analysis may often result in remedial measures being taken (as occurred here) does not mean that evidence of the analysis may not be admitted."); *Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron*, 805 F.2d 907, 918-19 (10th Cir. 1986) ("It would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports. … [S]uch tests are conducted for the purpose of investigating the occurrence to discover what might have gone wrong or right. Remedial measures are those actions taken to remedy any flaws or failures indicated by the test.").

County Defendants point out that the Ninth Circuit has applied Rule 407 in an excessive force case to exclude evidence regarding a police department's internal disciplinary proceeding. *See Maddox v. City of L.A.*, 792 F.2d 1408, 1417 (9th Cir. 1986). There is a distinction, however, between the actual disciplining of officers for their conduct, which could constitute a remedial measure, and the investigation that precedes a disciplinary process. *See, e.g.*, *Wilson v. Beebe*, 770 F.2d 578, 590 (6th Cir. 1985) (Rule 407 does not exclude a post-shooting report prepared by police department because "[t]he report did not recommend a change in procedures following the shooting; it was a report of that incident and nothing more"); *cf. Specht v. Johnson*, 863 F.2d 700, 701-02 (10th Cir. 1988) (citing *Maddox* in applying Rule 407 to city's press release that acknowledged officers had exercised poor judgment and reported that disciplinary action would

be taken: "[t]he release thus sets out remedial measures taken by the City to prevent the recurrence of the poor judgment the investigation revealed, and is therefore within the ambit of Rule 407"). County Defendants' Motion to Strike is denied.

## II.    County Defendants' Motion for Summary Judgment

### A.    *Claims for False Arrest and Malicious Prosecution*

At the outset, Aranda concedes that because Broyles, Crabtree, and the County did not arrest him, they cannot be liable for wrongful arrest. He also concedes they cannot be liable for malicious prosecution. The Court therefore grants County Defendants' motion for summary judgment on Aranda's federal and state claims for false arrest, as well as Aranda's state-law claim for malicious prosecution.

### B.    *§ 1983 Claim for Excessive Force*

County Defendants have also moved for summary judgment on Aranda's claim, brought under 42 U.S.C. § 1983, that Broyles violated Aranda's Fourth Amendment right not to be subjected to excessive force during the course of an investigatory stop or arrest. County Defendants argue that Broyles' use of force was objectively reasonable as a matter of law and therefore did not violate Aranda's rights; they also argue that Broyles is entitled to qualified immunity for his actions. The Court considers these two arguments in turn.

#### 1.    Excessive Use of Force

"In evaluating a Fourth Amendment Claim of excessive force, courts ask 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them.'" *Glenn v. Wash. Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Evaluating the objective reasonableness of the use of force in a given

situation "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). When conducting this balancing, however, the Court must bear in mind "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397. For this reason, the objective reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

Under Ninth Circuit precedent, an excessive force claim is analyzed in three steps. *Glenn*, 673 F.3d at 871. First, the Court evaluates the severity of the intrusion on Fourth Amendment rights by considering the type and amount of force used. "[E]ven where some force is justified, the amount actually used may be excessive." *Id.* (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (internal quotation marks omitted) (alteration in original)). Second, the Court identifies the government's interests that were furthered by the use of force. Third, the Court balances these two interests against one another. *See id.* On a motion for summary judgment, the Court must determine whether a reasonable jury, considering the evidence in the light most favorable to Aranda, could conclude at the end of this three-step analysis that Broyles' use of force was objectively unreasonable.

(a)      *The Type and Amount of Force Inflicted*

For purposes of County Defendants' motion for summary judgment, the Court focuses on the force deployed by Broyles. Broyles used his closed fist and knee to deliver multiple "focused

blows" to Aranda's head, shoulder, and side. The Yamhill County Sheriff's Office Use of Force

Policy ("County Policy") categorizes the use of focused blows as "serious physical control," the

most severe category of force short of deadly force. *See* Dkt. 15-2 at 29. The Court also notes

that the incident left Aranda with broken bones, although it is not clear that Broyles was directly

responsible for those particular injuries. Considering the evidence in the light most favorable to

Aranda, the type and amount of force used was significant. *Cf. Young v. Cnty. of L.A.*, 655 F.3d

1156, 1162-63 (9th Cir. 2011) ("Whatever such force [the use of pepper spray and two strikes

with a baton] is ultimately labeled, there is no question that its use against an individual is a

sufficiently serious intrusion upon liberty that it must be justified by a commensurately serious

state interest.").

*(b)    The Government Interests at Stake*

The Supreme Court in *Graham* identified several governmental interests relevant to

evaluating the propriety of the use of force: "[1] the severity of the crime at issue, [2] whether

the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is

actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. "Other relevant

factors include the availability of less intrusive alternatives to the force employed, [and] whether

proper warnings were given." *Glenn*, 673 F.3d at 872. The most important of these interests,

however, is whether the individual posed an immediate threat to the safety of the officers or

others. *Id*.

The Court construes the evidence in the light most favorable to Aranda, but it also must

consider the perspective of a reasonable officer in Broyles' shoes at the time of the incident.

Broyles arrived at the scene to see Heidt take Aranda to the ground and then struggle to place

Aranda in handcuffs. This situation would typically convey to a reasonable officer that Aranda was suspected of committing a crime or was posing a threat to officer safety. On the other hand, other than hearing a call to "step … up" the response, Broyles had not been forewarned that the situation was anything more than a routine traffic stop or that those present posed any particular threat. And while Aranda appeared to be resisting arrest, itself a crime, there was no indication, either from the circumstances of the scene or from the other officers present, that a more severe or dangerous crime had been committed.

Further, based on the video of the incident, a jury could find that Aranda's physical response was defensive and not combative. In particular, during the struggle, Aranda did not reach his hands for his waistline or make other sudden moves that would suggest aggressiveness. Broyles also acknowledged that he never heard Aranda utter any threats. Dkt. 16-1 at 6; *see also Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (*en banc*) (*Graham*'s threat factor weighed against officers on summary judgment where the suspect made no threats to the officers and only tried to shield himself from the police canine). Although the entire incident transpired very quickly, a jury could find that a reasonable officer should have determined that Aranda did not pose an immediate or serious threat.

Turning to the third *Graham* factor, Aranda's failure to place his arms behind his back was not necessarily what the Supreme Court meant by "actively resisting arrest or attempting to evade arrest by flight." Viewing the evidence in the light most favorable to Aranda, a jury could find that Aranda's noncompliance was not active resistance to arrest as much as an instinctive effort to protect himself from injury.[8]  In other excessive force cases, the Ninth Circuit has

_____

[8] The Ninth Circuit has recognized that an officer's provocative conduct may trigger a

OPINION AND ORDER, Page 12

limited the resistance/flight factor to more aggressive or sustained efforts to elude custody. *See Glenn*, 673 F.3d at 875 (analyzing the resistance-to-arrest factor in terms of whether the suspect actively attacked or threatened the officers or others); *Smith*, 394 F.3d at 703 (weighing the resistance-to-arrest factor against officers where the individual did not attempt to flee, resisted only briefly, did not attack the officers, and was not otherwise "particularly bellicose").

Finally, the Court considers whether there were less intrusive means of force available to Broyles. Although "[i]t is well settled that officers need not employ the least intrusive means available so long as they act within a range of reasonable conduct," "[t]he available lesser alternatives are … relevant to ascertaining that reasonable range of conduct." *Glenn*, 673 F.3d at 878. The McMinnville Police Department's Use of Force Review concluded that "[t]he head strikes administered by Sgt Heidt and Deputy Broyles appeared counterproductive to affecting [sic] the arrest as they intensified [Aranda's] efforts to pull his arms and hands into a defensive position," and that "there [did] not appear to be a valid basis for administering this level of force, particularly to the head." Dkt. 24-2 at 5. The conclusions reached internally by the police department regarding Heidt's conduct are not determinative of the reasonableness of Broyles' use of force, but they do indicate a genuine question of fact as to whether less intrusive options

---

limited amount of reasonable resistance that cannot then be used to justify the application of greater force. *See Young*, 655 F.3d at 1164. For summary judgment purposes, the Court considers provocative Heidt's sudden take-down of Aranda and initial strikes, and it appears that this conduct triggered an apparently defensive response by Aranda, who put his free hand out to break his fall and then placed both hands by his face. That Aranda did not immediately comply with orders to put his hands behind his back could thus be excused under this narrow safe harbor recognized by the Ninth Circuit and would not provide grounds for the rapid escalation of force then deployed by both Broyles and Heidt. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 479-80 (9th Cir. 2007) ("The lack of forewarning, the swiftness, and the violence with which the defendant officers threw themselves upon Blankenhorn could reasonably be considered 'provocative,' triggering Blankenhorn's limited right to reasonable resistance and thus making their later use of [additional force] unreasonable.").

were available to a reasonable officer in Broyles' position. Similarly, in a preliminary review of Broyles' use of force conducted by the Yamhill County Sheriff's Office, the reviewers were divided as to the appropriateness of the amount of force Broyles deployed. *See* Dkt. 24-3 at 9. Such uncertainty suggests there may have been other options available to Broyles at the time, which in turn is "relevant to ascertaining [the] reasonable range of conduct." *Glenn*, 673 F.3d at 878. The Court also notes the rapidity with which both Broyles and Heidt transitioned from physical control holds (a less significant level of force under the County policy, *see* Dkt. 15-2 at 29) to a cascade of focused blows: a reasonable jury could find that Aranda was given no opportunity to comply before Heidt and Broyles escalated the confrontation.

    *(c)*  *Balancing*

   Finally, the Court must consider "whether the degree of force used was warranted by the governmental interests at stake." *Deorle v. Rutherford*, 272 F.3d 1272, 1282 (9th Cir. 2001). Viewing the evidence in the light most favorable to Aranda, the degree of force used—focused blows to the head, back, and side—was significant, and the government interests at stake did not justify that level of force. *Cf. LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000) (even though individual resisted arrest, force may nonetheless have been excessive if arrest was for a relatively minor crime and the force resulted in injury). A reasonable jury could find that Broyles' use of force was not objectively reasonable and was therefore constitutionally excessive. Indeed, because the reasonableness of the use of force is necessarily fact-specific, it is often a question that cannot be resolved at summary judgment. *See Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) ("Because questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force is generally an issue for the jury."); *see*

*also, e.g.*, *Glenn*, 673 F.3d at 871; *Smith*, 394 F.3d at 701.[9]

        2.     <u>Qualified Immunity</u>

Even if there were a constitutional violation, a government official may nonetheless be entitled to qualified immunity if the right violated was not clearly established at the time of the incident. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[T]here is no doubt that *Graham v. Connor* … clearly established the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough." *Id.* at 201-02. It can be difficult for an officer, particularly in the heat of the moment, to determine how the objective reasonableness test for the use of force would apply to the factual situation he faces. *Id.* at 205. "An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances." *Id.* Thus, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. There must be sufficient case law to put the officer on fair notice that his conduct would be unlawful, *id.*, though the prior cases need not have "fundamentally similar" facts. *Young*, 655 F.3d at 1167 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (internal quotation marks omitted)).

The case of *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007), is sufficiently similar to the present case to have put Broyles on notice as to the legality of using "focused blows" to arrest a non-combative individual whose only apparent crime was minimal resistance

---

[9] County Defendants have asserted, in the context of their § 1983 excessive force argument, that "Broyles cannot be liable for battery if his use of force was reasonable." Dkt. 15-1 at 10. Because the Court determines there is a fact question regarding the reasonableness of Broyles' use of force, summary judgment on the battery claim would be inappropriate.

to arrest. The law enforcement officers in *Blankenhorn* reasonably suspected that Blankenhorn was trespassing, and when they confronted Blankenhorn, he was angry and frustrated. 485 F.3d at 468-69. Three officers then tackled him and took him to the ground; one of the officers also punched him in the head and side after he was down. *Id.* at 469-70. They then handcuffed him and put him in hobble restraints. *Id.* at 469. The Ninth Circuit held that this conduct not only violated Blankenhorn's Fourth Amendment rights, but that it was also contrary to clearly established law. *Id.* at 481 (emphasizing gang-tackle of Blankenhorn "without first attempting a less violent means of arrest" and the punching of Blankenhorn to free his arms when "he was not manipulating his arms in an attempt to avoid being handcuffed"). More recently, the Ninth Circuit has held that a police officer used excessive force during a routine stop for a minor traffic violation when the officer pepper-sprayed and struck the driver with his baton when the driver did not pose an immediate safety threat. *Young*, 655 F.3d at 1166-67. Although *Young* post-dates the February 13, 2010, incident and thus could not itself have provided fair notice to Broyles, the Ninth Circuit held that "[t]he legal principles that dictate our conclusion that the force involved was excessive were clearly established and indeed, long-standing, prior to 2007." *Id.* at 1167; *see also id.* at 1167-68 (discussing *Blankenhorn*).

County Defendants argue that two unpublished cases from other circuits demonstrate that Broyles was not on fair notice that his use of "focused blows" in this situation might be illegal. Besides being nonbinding authority, those cases are easily distinguishable. In *Brown v. Rinehart*, 325 F. App'x 47 (3d Cir. 2009), the defendant officer gave the suspect verbal warnings that failure to comply would result in the use of force and ultimately delivered a *single* "stun blow"

OPINION AND ORDER, Page 16

with his knee to the suspect's thigh. *Id.* at 51. A single knee strike to a thigh is a significantly less severe use of force than a rapid series of punches to someone's face.

In *Miller v. Village of Pinckney*, 365 F. App'x 652 (6th Cir. 2010),[10] the Sixth Circuit held that the officer's use of force was not excessive given the facts the officer knew at the time:

> In the moments before the incident, Shepard [the defendant officer] knew that Garbacik [his partner] had on her hands a woman who had threatened suicide, who had been drinking, who had been involved with a domestic disturbance, who had failed to stop when he activated his emergency lights and who had accelerated past his cruiser. He knew that, after a few minutes of no radio contact with Garbacik, she had activated her emergency signal, a last-resort measure by all accounts. And he knew that, upon pulling up behind Garbacik's unoccupied vehicle and upon not immediately seeing her or Miller, time was of the essence. When he finally saw Garbacik and [Miller] through the darkness and the rain, he thus reasonably chose not to pause to assess the situation ….

*Id.* at 655. Instead, the defendant officer ran up, struck Miller once across the face, and threw her against her van, even though Garbacik had already put Miller in handcuffs. *See id.* at 653. *Miller* also does not help County Defendants. First, the force used by the officer in *Miller* was not as severe as that used by Broyles; in particular, the Sixth Circuit noted that Miller "did not sustain any objectively serious injuries." *Id.* at 655. Second, the governmental interests at stake in *Miller* were stronger, with all three *Graham* factors present: the police were already looking for Miller because she was confrontational and intoxicated, the defendant officer knew his partner was alone with Miller and was signaling that she was in distress, and he had seen Miller flee from the police.

Viewing the evidence in the light most favorable to Aranda, Broyles is not entitled to qualified immunity for his use of force.

---

[10] The Court notes that this case also post-dates the February 13, 2010, incident.

C.      *§ 1983 Claim for Municipal Liability*

Aranda has also brought a § 1983 claim against the County and Sheriff Crabtree. Local governments can be sued directly under § 1983 for violations of constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). As the Ninth Circuit has explained, a plaintiff may recover from a municipality under § 1983 on three different theories: commission, omission, or ratification. *See Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010). "Commission" refers to a local government implementing its official polices or established customs when those policies or customs themselves inflict the constitutional injury. *Id.* at 1249. "Omission" refers to a local government's deliberate indifference to a constitutional right and includes, for example, the inadequate training of government officials. *Id.* "Ratification" refers to an authorized policymaker's purposeful approval of a subordinate's unconstitutional conduct. *Id.* at 1250. Aranda has pled a "ratification" claim against the County based on Sheriff Crabtree's alleged approval of Broyles' use of force. *See* Am. Compl., Dkt. 5, ¶ 32.

County Defendants have moved for summary judgment on all of Aranda's claims. They have not, however, offered any argument for why Aranda cannot succeed on his ratification theory of municipal liability under § 1983.[11] "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion …." *Celotex Corp.*, 477 U.S. at 323. This initial responsibility does not require "the moving party [to] support

---

[11] County Defendants did argue that there is no evidence of negligence in the hiring, training, or supervision of Broyles. Those arguments, however, relate to Aranda's state-law claim for negligence, discussed below. County Defendants' papers include no discussion of whether the County, through Sheriff Crabtree, *ratified* Broyles' conduct after it occurred, as alleged by Aranda under §1983.

OPINION AND ORDER, Page 18

its motion with affidavits or other similar materials *negating* the opponent's claim" where, as here, the opponent would bear the burden of proof on that issue at trial. *Id.* Still, the moving party must at least point out to the Court "that there is an absence of evidence to support [Aranda's] case." *Id.* at 325; *see also Katz v. Children's Hosp.*, 28 F.3d 1520, 1534 (9th Cir. 1994) (requiring the party moving for summary judgment to place nonmoving party on "proper notice" regarding which issues the movant argues are not genuinely in dispute). Because County Defendants have not made this initial showing, the Court denies summary judgment on this claim.[12]

   D.    *Negligence Claim*

County Defendants have also moved for summary judgment on Aranda's state-law negligence claim. Aranda has alleged that the County was negligent in "[f]ailing to administer training and to timely and appropriately hire, train and supervise employees" and that "[i]ndividual officers were negligent in their dealings with plaintiff in causing injury without provocation or justification." Am. Compl., Dkt. 5, ¶ 34.

      1.   Negligence in Training and Supervision

County Defendants argue that Aranda cannot show negligence in the training or supervision of Broyles because Broyles acted in accordance with the County Policy. *See* Dkt. 15-1 at 15. Aranda does not concede this point, but neither does he argue against it as a matter of law or identify any evidence to support his claim that the County was negligent in its hiring, training, or supervision of Broyles. In this instance, County Defendants put Aranda on

---

[12] As discussed at oral argument, the evidence of ratification currently in the record would likely be insufficient on its own to survive summary judgment were the question to be properly presented.

notice of the grounds for their motion, and Aranda has not made a sufficient showing that he could carry his burden of proof on this claim at trial. *See Celotex Corp.*, 477 U.S. at 322-23. The Court grants summary judgment to County Defendants on the claim that the County was negligent in its hiring, training, or supervision of Broyles.

        2.     <u>Conduct of Deputy Broyles</u>

Finally, County Defendants move for summary judgment on Aranda's state-law negligence claim to the extent it is based on the conduct of Broyles. The amended complaint alleges that Broyles struck Aranda multiple times with his fist and knees. *See* Am. Compl., Dkt. 5, ¶¶ 12-13. These are allegations of battery, which is an intentional tort, not negligent conduct. *See Denton v. Arnstein*, 197 Or. 28, 45, 250 P.2d 407, 415 (1952) ("An assault and battery is not negligence. The former is intentional and wilful; the latter unintentional. When defendant's conduct is wilful and intentional, it is no longer negligence …."). Because Aranda only alleges that Broyles committed intentional acts—and has offered no legal argument or factual evidence to the contrary—the Court grants summary judgment to County Defendants on the claim that Broyles' conduct was negligent. *See Kasnick v. Cooke*, 116 Or. App. 580, 583, 842 P.2d 440, 441 (1992) (plaintiff could not plead negligence based only on allegations of intentional conduct because "there is no such thing as a negligent fist fight"); *accord, e.g.*, *Woods v. Gutierrez*, 3:11-CV-01082-BR, 2012 WL 6203170, at *12 (D. Or. Dec. 12, 2012); *Paul v. Cnty. of Union¸* CV-04-1543-HU, 2005 WL 2083017, at *10 (D. Or. Aug. 22, 2005).

## CONCLUSION

The Court DENIES County Defendants' Motion to Strike (Dkt. 26). The Court GRANTS in part and DENIES in part County Defendants' Motion for Summary Judgment (Dkt. 15) as

follows: summary judgment against Plaintiff is granted on the § 1983 claim for wrongful arrest, the state-law claim for negligence, the state-law claim for false arrest, and the state-law claim for malicious prosecution, but it is denied as to the § 1983 claim for excessive force, the §1983 claim for municipal liability, and the state-law claim for battery.

DATED this 29th day of April, 2013.


/s/  Michael H. Simon____
Michael H. Simon
United States District Judge